# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RUSSELL E. ROBINSON,                      :
                                          :
    Plaintiff,                        :    Civil Action No.:    14-0451 (RC)
                                          :
    v.                                :    Re Document No.:    10
                                          :
MICHAEL P. HUERTA, ADMINISTRATOR,  :
FEDERAL AVAIATION                         :
ADMINISTRATION,                           :
                                          :
    Defendant.                        :

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

In August 2005, *pro se* Plaintiff Russell Robinson ("Mr. Robinson") was convicted by a jury of conspiracy to possess with intent to distribute cocaine, conspiracy to import cocaine, and conspiracy to launder money. The Federal Aviation Administration ("FAA") subsequently determined that Mr. Robinson had served as an airman or been aboard an aircraft to facilitate the offenses of conviction, and on March 3, 2008, it issued an order revoking his commercial pilot, mechanic, and ground instructor certificates pursuant to 49 U.S.C. §§ 44709 and 44710. An administrative law judge ("ALJ") with the National Transportation Safety Board ("NTSB") affirmed the revocations in September 2008, and Mr. Robinson filed the instant action in March 2014, arguing that the FAA and NTSB's lifetime revocation of his certificates was unlawful. Now before the Court is the FAA's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim for relief. Upon consideration of the parties' submissions, the Court will grant the FAA's

motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## I. FACTUAL BACKGROUND

On April 11, 2003, Mr. Robinson was indicted for participating in a multi-defendant drug and money laundering conspiracy in the U.S. Virgin Islands.  *See* Indictment, Def.'s Ex. A at 39–58, ECF No. 10-1.[1]  A superseding indictment returned on September 30, 2004, charged that Mr. Robinson, "a private pilot, would transport . . . co-conspirators to various destinations in the Caribbean for the purpose of delivering the illegal proceeds of the drug sales so that it could be laundered and/or picking up drugs or arranging drug shipments into the Virgin Islands." Superseding Indictment, Def.'s Ex. A at 3, ECF No. 10-1.  After a jury trial, Mr. Robinson was convicted of conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841, conspiring to import cocaine in violation of 21 U.S.C. § 963, and money laundering conspiracy in violation of 18 U.S.C. § 1956(h).  Compl. at 4, ECF No. 1; Judgment, Def.'s Ex. A at 34, ECF No. 10-1.

As a consequence of Mr. Robinson's convictions, on March 3, 2008, the FAA issued an Order of Revocation, which revoked Mr. Robinson's Commercial Pilot Certificate, Mechanic Certificate, and Ground Instructor Certificate.  FAA Order, Pl.'s Ex. 2 at 14–15, ECF No. 1.  The order explained that pursuant to 49 U.S.C. § 44710, the circumstances of Mr. Robinson's convictions—that he served as an airman or was aboard a U.S. civil aircraft to facilitate the offenses of conviction—"mandate the revocation of any and all airman certificates and ground instructor certificates held by you . . . ."  *Id.* at 15.  The order further stated that "the

---

[1] *See also United States v. Fleming*, 287 F. App'x 150 (3d Cir. 2008) (affirming conviction of Mr. Robinson and two co-defendants).

Administrator has determined that safety in air commerce or air transportation and the public interest require the revocation . . .” *Id.* at 14.

Mr. Robinson appealed the FAA’s March 2008 order to the NTSB’s Office of Administrative Law Judges, and an ALJ affirmed the revocation on September 11, 2008. *See* Compl. at 4; ALJ Order, Def.’s Ex. C, ECF No. 10-3. Mr. Robinson then appealed the ALJ’s September 2008 affirmance to the NTSB, but on October 31, 2008, the NTSB dismissed the appeal, finding that Mr. Robinson had withdrawn it. NTSB Order of Dismissal, Oct. 31, 2008, Def.’s Ex. D, ECF No. 10-4. Mr. Robinson petitioned for reconsideration of the September 2008 order on November 14, 2012, and the petition was denied as an untimely appeal on May 2, 2013. NTSB Order, May 2, 2013, Def.’s Ex. B at 1–2, ECF No. 10-2; *see also* Compl. at 4.

On March 20, 2014, Mr. Robinson filed the instant action seeking declaratory and injunctive relief “that requires FAA to remedy constitutional and statutory violations as a result of its application of 49 U.S.C. § 44710 to Plaintiff . . . .” Compl. at 2. In his complaint, Mr. Robinson alleges that the FAA’s March 2008 order of revocation “mischaracterized the facts alleged at trial,” and that the lifetime revocation of his certificates violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. *Id.* at 4–5, 9. More specifically, Mr. Robinson claims that the actions of the FAA and NTSB have violated his “Constitutionally protected interests in travelling (privately in General Aviation Aircraft) by air,” his “Constitutional Right to Contract so as to earn a sufficient and adequate lawful[] living,” his “public right of transit through navigable airspace” pursuant to 49 U.S.C. § 40103(a)(2), and his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 5–10. He further asserts that “the provisions of 49 U.S.C. § 44710 et seq. are Unconstitutional on its face, as it pertains to its lifetime revocation of Robinson’s certificates,” and he asks that the Court issue a

declaratory judgment finding that the application of § 44710 to Mr. Robinson's certificates is cruel and unusual in violation of the Eighth Amendment, and that the Court order the FAA and NTSB "to withdraw their revocation order(s)" and permit him to exercise his right to travel by air and to perform repair work. *Id.* at 9–10. Mr. Robinson also asks that the Court take judicial notice of all trial and sentencing transcripts, "which will clearly demonstrate that there is no evidence, none whatsoever, that Robinson transported any Drugs, or acted as a pilot in command or was aboard an aircraft in any capacity that transported drugs." Compl. at 9.

The FAA now moves to dismiss Mr. Robinson's complaint in its entirety, arguing that this Court lacks subject-matter jurisdiction over Mr. Robinson's claims and that his constitutional claims fail as a matter of law.[2] Def.'s Mot. to Dismiss, ECF No. 10.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). On a

---

[2] Alternatively, the FAA requests summary judgment, perhaps because both parties have attached a number of exhibits to their filings. Attached to Mr. Robinson's complaint are copies of his certificates, the FAA's revocation order, and correspondence between him and the FAA. *See* Pl.'s Exs. 1–10 at 12–25, ECF No. 1. The FAA attached to its motion to dismiss a number documents referenced in the complaint, including documents pertaining to Mr. Robinson's indictment, trial, and conviction, as well as the agency orders presently in dispute. *See* Def.'s Exs. A–D, ECF Nos. 10-1, 10-2, 10-3, 10-4. Mr. Robinson has not disputed the authenticity of the documents, which are a matter of public record and referenced in his complaint. Accordingly, the Court may consider the documents without turning Defendant's motion to dismiss into a motion for summary judgment. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice").

motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction through adequate factual allegations. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations "closer scrutiny" when deciding a Rule 12(b)(1) motion than it would when resolving a Rule 12(b)(6) motion for failure to state a claim. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, courts are not limited to considering the allegations contained in the complaint, and can consult extra-pleading materials when "determining the threshold jurisdictional issue." *See Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987).

### B.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). "A motion under Rule 12(b)(6) does not test a plaintif's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim." *Johnson v. Sullivan*, 748 F. Supp. 2d 1, 8 (D.D.C. 2010). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson*, 551 U.S. at 94).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even *pro se* litigants "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (internal citations and quotation marks omitted). Moreover, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### III. ANALYSIS

### A. Subject Matter Jurisdiction

The FAA first argues that this Court lacks jurisdiction over Mr. Robinson's claims challenging the revocation of his certifications under 49 U.S.C. § 44710. Def.'s Mem. Supp. Mot. to Dismiss at 13–16, ECF No. 10. It maintains that jurisdiction over such matters lies exclusively in the U.S. Courts of Appeals, and that in any case, the 60-day window for obtaining judicial review of the revocations has long-since expired. *Id.* 49 U.S.C. § 44710(d)(3) provides that "[a]n individual substantially affected by an order of the Board under this subsection . . .

may obtain judicial review of the order under section 46110 of this title."  Section 46110, in turn, provides that:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . [or] the Administrator of the Federal Aviation Administration . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.  The petition must be filed not later than 60 days after the order is issued.  The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

49 U.S.C. § 46110(a).  The FAA therefore concludes that Mr. Robinson's claims challenging the revocations cannot be considered by this Court, and that "jurisdiction over this matter properly lies, if at all, with the U.S. Court of Appeals for the District of Columbia."  Def.'s Mem. Supp. Mot. Dismiss at 13.

Mr. Robinson disputes the FAA's argument, asserting first that the "instant matter can in fact be considered Nunc Pro Tunc," because his 2008 appeal to the NTSB was "mischaracterized and dismissed unilaterally."  Pl.'s Opp'n at 1–2, ECF No. 11.  He also argues that "this Court has subject matter jurisdiction to interpret the application of 49 U.S.C. section 44710, and its Constitutionality on a whole."  Id. at 2–3.  In support of his assertion of subject-matter jurisdiction, Mr. Robinson points to Reno v. Catholic Social Services, Inc., 509 U.S. 43, 55–56 (1993), which held that a similar statutory provision that prevents district courts from hearing an individual's challenge to an agency's decision does not prevent district courts from exercising "jurisdiction over an action challenging the legality of a regulation without referring to or relying on" the agency's decision in any individual case.  Id. at 56.

As this Court has previously stated, 49 U.S.C. § 46110(a) gives exclusive jurisdiction over FAA administrative revocation orders and claims that are "inescapably intertwined with review of such orders" to the U.S. courts of appeals.  Breen v. Peters, 474 F. Supp. 2d 1, 4

(D.D.C. 2007) (internal quotation marks omitted).  *Breen* explained that "[a] claim is inescapably

intertwined . . . if it alleges that the plaintiff was injured by such an order and . . . the court of

appeals has authority to hear the claim on direct review of the agency order."  *Id.* (quoting

*Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001)).  As a consequence, district courts may

not hear "as-applied challenges in which the plaintiff seeks review of the procedures and merits

of an order," but "the inescapable-intertwinement doctrine, as applied to § 46110(a), stops short

of preventing a district court from reviewing 'broad facial challenges' to a[n] [agency] order."

*Amerijet Int'l, Inc. v. U.S. Dep't of Homeland Sec.*, 43 F. Supp. 3d 4, 14–15 (D.D.C. 2014).

Mr. Robinson is therefore correct to the extent that he argues that this Court has

jurisdiction over facial challenges to § 44710's "[c]onstitutionality as a whole," but the Court

lacks jurisdiction to hear "as-applied" claims that constitute mere collateral attacks on an

individual FAA order of revocation.  To determine in which category Mr. Robinson's complaint

falls, the Court must consider the substance of the complaint and "look to the gravamen of [Mr.

Robinson's] claims to determine whether the plaintiff is asserting a broad challenge to the

[FAA's] actions, or if [he] merely is attempting to circumvent § 46110(a) by erroneously

describing [his] real effort to seek collateral review of the procedures and merits surrounding [the

FAA's revocation order]."  *Amerijet Int'l*, 43 F. Supp. 3d at 15–16; *Mohamed v. Holder*, No.

1:11–cv–50, 2011 WL 3820711, at *6 (E.D.Va. Aug. 26, 2011) ("The applicability of Section

46110 is to be judged by reference to the substance of plaintiff's claims, not his characterization

of those claims as something other than the review of a[n] [agency] order.").

Here, Mr. Robinson's complaint repeatedly states that he is challenging the FAA's

application of § 44710 in its March 2008 order revoking his certificates.  *See generally* Compl.

(requesting remedy for "violations as a result of [FAA's] application of 49 U.S.C. § 44710 to

plaintiff," stating that he "challenges an Administrative Agency's Final Action that has resulted" in violations of his constitutional rights, alleging that "the application of 49 U.S.C § 44710 et seq[.] to Robinson by the Permanent Lifetime Revocation of Robinson's [certificates] is Unconstitutional").  In his opposition brief, Mr. Robinson expands on these general assertions, claiming that the NTSB's 2008 dismissal of his appeal was erroneous because his "Appeal was mischaracterized and dismissed unilaterally," that the "FAA utilized an inapplicable statute to revoke" his certificates, and that it based the revocations on "misinformed fact," such that his Fifth Amendment due process rights were violated.  *See* Pl.'s Opp'n at 2–5.  He also complains that his due process rights were violated because his certificates were revoked while he was incarcerated, so he was not "afforded any Hearing" and did not have ready access to his trial transcripts.  *Id.* at 2.

In short, the gravamen of Mr. Robinson's complaint centers not on constitutional deficiencies in the general procedures established by § 44710, but on the manner in which § 44710 was applied to his individual case and on alleged errors of fact and law contained in the FAA and NTSB orders pertaining to the revocation of his certificates.  Such claims fall within the scope of § 46110(a), and cannot be heard by this Court.[3]  *See Amerijet Int'l*, 43 F. Supp. 3d at 18–20 (holding that district court could not hear "as applied" challenge that would require the Court "to evaluate how the agency acted in regard to applying the [disputed regulation] specifically to [the plaintiff]," because "even if not a direct attack on the order itself, [it] is

---

[3] The FAA also argues that this Court lacks jurisdiction over Mr. Robinson's claims because he withdrew his appeal to the NTSB and thus failed to exhaust administrative remedies. *Id.* at 14–15.  Mr. Robinson protests that he did not withdraw his appeal, and that the NTSB erred by treating it as withdrawn. *See* Pl.'s Opp'n at 2, 4–5.  Because the Court finds that 49 U.S.C. § 46110 vests exclusive jurisdiction over Mr. Robinson's as-applied claims with the courts of appeals, the Court need not address this alternative jurisdictional argument.

clearly inescapably intertwined with a review of that order"); *see also Gilmore v. Gonzales*, 435 F.3d 1125, 1138 (9th Cir. 2006) (holding that plaintiff's due process claim "is 'inescapably intertwined' with a review of the order because it squarely attacks the orders issued by the [agency]," and that plaintiff's "other claims are as-applied challenges as opposed to broad facial challenges" that "arise out of the particular facts of [the plaintiff's] encounter" and therefore "must be brought before the courts of appeals").

Accordingly, the Court finds that Mr. Robinson's "as-applied" claims are inescapably intertwined with the procedures and merits of the order revoking his certificates. Such collateral attacks on the FAA order could only be reviewed by the courts of appeals, and only if such review was sought within 60 days of the issuance of the order. Here, however, the FAA's revocation order was issued in March 2008 and affirmed in September 2008. Although Mr. Robinson argues that his appeal of the September 2008 order was mischaracterized by NTSB as "withdrawn" in October 2008,[4] that argument goes to the merits of NTSB's dismissal of the appeal and provides no "reasonable grounds" for Mr. Robinson's decision not seek judicial review until March 2014.

The Court therefore grants the FAA's motion to dismiss for lack of subject-matter jurisdiction Mr. Robinson's claims that the FAA and NTSB's application of § 44710 in this instance violated Mr. Robinson's constitutional and statutory rights.[5]

---

[4] Even if the Court were to start the 60-day clock on May 2, 2013, when Mr. Robinson's motion for reconsideration was denied, the clock would have run on July 1, 2013—more than eight months before Mr. Robinson filed his complaint in this case.

[5] When a federal district court concludes that it lacks subject matter jurisdiction, the court "'only has the authority to make a single decision: to dismiss the case, or in the interest of justice, to transfer it to another court' pursuant to 28 U.S.C. § 1631." *Amerijet Int'l*, 43 F. Supp. 3d at 21 (quoting *Boultinghouse v. Lappin*, 816 F. Supp. 2d 107, 112–13 (D.D.C. 2011)). Here, Mr. Robinson has alleged no "reasonable grounds" for his failure to comply with the 60-day window for seeking judicial review, meaning that he has not shown that the action "could have

### B.  Failure to State a Claim

Having granted the FAA's motion to dismiss Mr. Robinson's "as-applied" claims as collateral attacks on the FAA's revocation order outside the jurisdiction of this Court, the Court is left with the question of whether the complaint could plausibly be read to include a "broad facial challenge" to the lawfulness of § 44710 over which this Court would have jurisdiction. Although the title and much of the language of the complaint describes as-applied constitutional claims, *pro se* litigants are granted some leeway, *see Estelle*, 429 U.S. at 106, and one portion of Mr. Robinson's complaint asks the Court to find that "the provisions of 49 U.S.C. § 44710 et seq[.] are Unconstitutional on its face, as it pertains to the lifetime revocation of Robinson's certificates . . . ." Compl. at 9.  Mr. Robinson's opposition brief asserts that his challenge is to both the FAA's application of the statute to his case and "to the Constitutionality of the Statute itself." Pl.'s Opp'n at 4.  The Court will therefore proceed to consider the FAA's argument that, to the extent that this Court has jurisdiction over Mr. Robinson's claims, his allegations are insufficient to state a plausible claim for relief and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1.  Cruel & Unusual Punishment

Mr. Robinson's complaint asserts that the lifetime revocation of commercial pilots licenses pursuant to § 44710 violates the "Eighth Amendment Prohibition on 'Cruel and Unusual Punishment.'" Compl. at 8–9.  The FAA, however, contends that the Eighth Amendment does not apply outside the criminal context, and because "revocation under § 44710 is not a criminal

---

been brought [in the court of appeals] at the time it was filed" in this Court.  *See* 28 U.S.C. § 1631 (allowing a transfer in the interest of justice if the matter could have been brought in a court with jurisdiction at the time the matter was filed in a court without jurisdiction).  The Court will therefore dismiss Mr. Robinson's claims rather than transfer them *sua sponte* to the court of appeals.

punishment, the Eighth Amendment is inapplicable here."  Def.'s Mem. Supp. Mot. Dismiss at 17–18.

The Eighth Amendment to the U.S. Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "[T]he protection afforded by the Eighth Amendment is limited," however, and "[i]n the few cases where the [Supreme] Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable."  *Ingraham v. Wright,* 430 U.S. 651, 667–70 (1977); *see also Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 184–191 (1948) (holding that "[t]he purpose of mail fraud orders is not punishment, but prevention of future injury to the public by denying the use of the mails to aid a fraudulent scheme," such that the Postmaster's order forbidding delivery of a magazine owners' mail due to fraud was not a "punishment" within the meaning of the Eighth Amendment).  More recently, the Supreme Court has explained that to determine whether the Eighth Amendment's protections apply in a given case, courts must ask whether the government action in question is punitive or remedial in nature.  *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (holding that Eighth Amendment applied to civil forfeiture proceedings that were not solely remedial in nature).

In this case, however, Mr. Robinson has repeatedly conceded that the FAA's lifetime revocation of his certificates pursuant to § 44710 constitutes a "remedial sanction that does not involve enforcement of civil fines, penalty or forfeiture."  Pl.'s Opp'n at 6 (citing *Hinson v. Brzoska*, NTSB EA-4288, 1994 WL 808068, at *2 (1994)); Compl. at 5 (same).  This concession is fatal to Mr. Robinson's Eighth Amendment claim.[6]

---

[6] *See also Zukas v. Hinson*, 124 F.3d 1407, 1412–13 (11th Cir. 1997) ("There is no evidence that Congress had a retributive or deterrent purpose in providing for the revocation of

Although Mr. Robinson points to *Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003), to suggest that an agency-imposed sanction with a lifetime duration may constitute cruel and unusual punishment, *Overton* addressed in *dicta* only whether a hypothetical prison regulation imposing a lifetime ban on receiving visitors might result in unconstitutional conditions of confinement. *Id.* The statute at issue in this case bears no relationship to conditions of confinement for incarcerated individuals, and thus Mr. Robinson's reliance on *Overton* is misplaced. *Cf. Overton*, 539 U.S. at 136–37 (holding that regulation that prevented inmates from receiving visitors for two years fell within the "accepted standards for conditions of confinement," and did not "create inhumane prison conditions, deprive inmates of basic necessities, . . . fail to protect their health or safety. . . [or] involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur"). It thus provides no basis for finding the administrative and remedial sanction at issue in this case constitutes punishment, let alone cruel and unusual punishment that violates the Eighth Amendment.

The Court therefore finds that Mr. Robinson's Eighth Amendment claim fails as a matter of law and is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## 2. The Right to Follow a Chosen Trade

Mr. Robinson also claims that the lifetime revocation of FAA certificates violates the "Constitutional Right To Contract so as to earn a sufficient and adequate lawful[] living." Compl. at 6. More specifically, he alleges that by virtue of the revocations, he is being

---

pilots' certificates in any of the legislation that preceded the current law; instead, congressional impetus was remedial to ensure air safety and competence in aviation. . . . Because revocation of a pilot certificate is not a criminal sanction, but it is a remedy imposed to enhance air safety and to promote the public interest, it cannot constitute punishment for double jeopardy purposes." (internal quotation marks and citations omitted)); *Roach v. NTSB*, 804 F.2d 1147, 1153 (10th Cir. 1986) ("We conclude that Congress did not intend revocation or suspension of an airman's certificate to be a criminal penalty.").

discriminated against as a "class of one," in contravention of *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that plaintiff who "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" states a "class of one" Equal Protection Clause claim).

In the absence of any allegations pertaining to impaired contract obligations or barriers to interstate trade, the FAA has interpreted Mr. Robinson's purported right-to-contract claim as one actually asserting a violation of the constitutional right to follow a chosen trade.  Def.'s Mem. Supp. Mot. Dismiss at 19.  Mr. Robinson does not dispute this reading of his complaint, or the FAA's assertion that such a claim is subject to rational basis review. [7]  *See generally* Pl.'s Opp'n. The Court therefore considers whether Mr. Robinson has adequately alleged that § 44710, on its face, infringes a constitutionally-protected right to follow a chosen trade and bears no rational relationship to a legitimate governmental interest. [8]

---

[7] Although the D.C. Circuit does not appear to have spoken on the issue, a number of courts have held that limitations on the right to engage in a profession are subject to rational basis review.  *See, e.g., Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 107–08 (1st Cir. June 17, 2015) (applying rational basis review to plaintiff's equal protection and substantive due process claims premised on the right to obtain a license to practice medicine); *Dittman v. California*, 191 F.3d 1020, 1031 n.5 (9th Cir. 1999) ("The [Supreme] Court has never held that the 'right' to pursue a profession is a fundamental right, such that any state-sponsored barriers to entry would be subject to strict scrutiny."); *Sammon v. N.J. Bd. of Med. Examiners*, 66 F.3d 639, 645 (3d Cir. 1995) (holding that "restrictions on the right to practice a profession receive rational basis review rather than higher scrutiny"); *Whittle v. United States*, 7 F.3d 1259, 1262–63 (6th Cir. 1993) (holding that "the rational basis test applies" to plaintiff's claim that IRS regulation requiring graduation from an accredited law school interfered with his ability to practice law, and rejecting assertion that the claim implicated a "fundamental right").  Because Mr. Robinson concedes the applicability of rational basis review, however, the issue is not presently before the Court, and the Court proceeds on the assumption that the rational basis test applies to such claims.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

[8] A plaintiff bears the burden of showing "that there is no rational relationship between [the provision at issue] and some legitimate governmental purpose," meaning that the plaintiff

"It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition." *Dent v. West Virginia*, 129 U.S. 114, 121 (1889); *see also Meyer v. Nebraska*, 262 U.S. 390, 399–400 (1923) (recognizing as a protected liberty interest "the right of the individual . . . to engage in any of the common occupations of life," holding that "this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect").[9]  Accordingly, the right to continue engaging in a lawful profession, once obtained, "cannot be arbitrarily taken from [U.S. citizens], any more than their real or personal property can be thus taken.  But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society." *Dent*, 129 U.S. at 121–22; *see also Nebbia v. People of New York*, 291 U.S. 502, 527-28 (1934) ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned."); *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (recognizing that although"[t]he Constitution protects an individual's 'right to follow a chosen

---

bears the burden "to negative every conceivable basis which might support the law." *Gordon v. Holder*, 721 F.3d 638, 656 (D.C. Cir. 2013) (internal quotation marks and citations omitted).

[9] Although much of the Supreme Court's analysis pertaining to the right to pursue a lawful profession arises in the context of the Fourteenth Amendment's Due Process Clause, the same right is protected by the Fifth Amendment. *See Hibben v. Smith*, 191 U.S. 310, 325 (1903) ("The 14th Amendment, it has been held, legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation affecting life, liberty, and property as is offered by the 5th Amendment against similar legislation by Congress.").

trade or profession' without governmental interference," there are "limitations on this principle").

The FAA appears to concede that the revocation of pilot or mechanic certificates limits the ability of certain individuals to pursue their chosen professions, but it argues that such infringement is constitutionally permissible because § 44710 is rationally related to the legitimate state interests in combatting illegal drug trafficking and enhancing aviation safety. Def.'s Mem. Supp. Mot. Dismiss at 20–22.  In support, the FAA points first to the Senate report pertaining to section 44710, which explains that the provision was designed in part to aid law enforcement officers who had been hampered by "an inability to prevent the same pilots and the same aircraft from repeated participation in aerial drug trafficking."  S. Rep. No. 98-228, at 2 (1983).  The House of Representatives' report further explained that:

> The use of private aircraft in drug smuggling creates many problems for aircraft owners and operators.  Drug smuggling flights create safety problems because of the hazardous maneuvers pilots undertake to avoid detection, such as operating without a flight plan and flying at extremely low altitudes.  It is estimated that between 1980 and 1982 there were 491 accidents involving aircraft suspected of carrying drugs.

H.R. Rep. No. 98-883, at 3 (1984).  The FAA therefore concludes that § 44701's legislative history establishes that the statute, which provides for the revocation of the certificate of any pilot convicted of certain drug-related crimes facilitated by the use of an aircraft, is rationally related to legitimate state interests in aviation safety and interdiction of illegal drug trafficking.

In opposition, Mr. Robinson disputes the assertion that § 44710 is reasonably related to the identified state interests, pointing out that the revocation of a commercial pilot's license under the statute does not prevent someone from flying a foreign registered aircraft with a foreign pilot's license, and arguing that any person who is "determined to break any law, will do so, certificate valid or no certificate."  Pl.'s Opp'n at 8.  Neither argument holds water.

While it may be true that revoking an airman's certificate under § 44710 does not prevent him from flying a foreign-registered aircraft with a foreign pilot's license to traffic drugs, it has long been established that Congress does not act without a rational basis simply because it chooses to take small or incremental steps at addressing a broader problem like aerial drug trafficking.  *See, e.g., FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993) ("[T]he legislature must be allowed leeway to approach a perceived problem incrementally."); *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 488 (1955) ("It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."); *see also Emory v. United Air Lines, Inc.*, 720 F.3d 915, 923 (D.C. Cir. 2013) (upholding law raising maximum age for pilots that was only partially retroactive, observing that "it would be an odd thing indeed to hold the legislature has acted irrationally in attempting to strike a less draconian balance by providing *some* measure of protection to over–60 pilots").  Additionally, the fact that some lawbreakers may not be deterred by the revocation of their certificates does not make § 44710 an unreasonable means of pursuing Congress' objectives; complete deterrence is not needed for the statute to pass constitutional muster.  All that is necessary is that the statute bear some "rational relationship" to the legitimate governmental purposes of promoting aviation safety and decreasing aerial drug trafficking, and where, as here, "there are plausible reasons for Congress' action, our inquiry is at an end." *Beach Commc'ns, Inc.*, 508 U.S. at 313–14 (internal quotation marks omitted).

Therefore, because Mr. Robinson's allegations fail to establish that 49 U.S.C. § 44710 is not rationally related to legitimate governmental interests in preventing drug trafficking and promoting aviation safety, his claim that the statute constitutes unconstitutional infringement on the right to pursue a chosen trade is dismissed.

### 3.  The Right to Travel

Mr. Robinson's next claim asserts that § 44710 violates the "Right to Travel as Guaranteed by the Privileges and Immunities Clause, i.e., Article IV, § 2, cl. 1, and the Fourteenth Amendment's § 1," reasoning that "if State officials are prohibited from depriving citizens of the right to travel, the same prohibition incorporated in the above two Constitutional Clauses applies to the Federal . . . Agencies."[10]  Pl.'s Compl. at 6–8.

As the FAA correctly observes, however, the privileges and immunities clause of the Fourteenth Amendment applies only to the states, and not to federal agencies.  Def.'s Mem. Supp. Mot. Dismiss at 13 n. 3.  The Fourteenth Amendment says in pertinent part that "*[n]o State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."  U.S. Const. amend XIV § 1 (emphasis added).  Mr. Robinson's assumption that the Fourteenth Amendment must apply to the federal government is belied by the plain language of the amendment.  *Id.*; *see also San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 543 n.21 (1987) (holding that the Fourteenth Amendment applies only to actions by the States, and not to actions by the Federal Government).

The Privileges and Immunities Clause of Article IV is similarly inapplicable to a suit against the federal government.  In *Pollack v. Duff*, the D.C. Circuit Court recently held that "the

---

[10] The Court notes that Mr. Robinson also invokes 49 U.S.C. § 40103(a) (recognizing that the United States government has "exclusive sovereignty of airspace" and that citizens have "a public right of transit through the navigable airspace," such that the Secretary of Transportation must take special care when issuing an order that could significantly impact or impair handicapped individuals' access to commercial air transportation).  More specifically, he invokes § 40103(a)(2) as interpreted by *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1217 (Fed. Cir. 2005).  But as *Air Pegasus* explains, § 40103(a)(2) establishes "that the navigable airspace is public property not subject to private ownership," and it does *not* convey a private right of access to navigable airspace.  424 F.3d at 1217–18 (holding that plaintiff lacked a cognizable Fifth Amendment property interest in access to navigable airspace).  Accordingly, *Air Pegasus* provides no support for Mr. Robinson's claim.

Privileges and Immunities Clause of Article IV does not constrain the powers of the federal government at all."  No. 13-5263, 2015 WL 4079788, at *4 (D.C. Cir. July 7, 2015).  Like the Fourteenth Amendment, the Privileges and Immunities Clause of Article IV "is a limitation upon the powers of the states," *id.* (internal quotation marks omitted), and it thus provides no basis for Mr. Robinson's right to travel claim in this case.

This does not end the matter, however.  The Supreme Court has yet to clarify precisely where in the Constitution the right to travel is located, *see Saenz v. Roe*, 526 U.S. 489, 501 (1999) (saying of the "right to go from one place to another, including the right to cross state borders," that "we need not identify the source of that particular right in the text of the Constitution" and hypothesizing that it "may simply have been conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created") (internal quotation marks omitted).  But there is no question that a constitutionally-protected right to travel interstate exists.  *See Pollack*, 2015 WL 4079788, at *3–10 (analyzing claim of unconstitutional infringement of right to travel under the Fifth Amendment).  In light of Mr. Robinson's *pro se* status, the Court therefore considers whether his complaint could fairly be read as stating a plausible claim that § 44710, on its face, violates the constitutional right to interstate travel protected by the Fifth Amendment Due Process Clause, which "indisputably applies to the federal government."  *Id.* (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995)).

Pursuant to § 44710, if a person is convicted of a felony "under a [state or federal law] related to a controlled substance (except a law related to simple possession . . . )," the FAA must issue an order revoking any airman certificates issued to that person "if the Administrator finds that—(A) an aircraft was used to commit, or facilitate the commission of, the offense; and (B) the individual served as an airman, or was on the aircraft, in connection with committing, or

facilitating the commission of, the offense." 49 U.S.C. § 44710(b)(1). According to Mr. Robinson, this revocation results in a permanent ban on the exercise of the "Constitutionally protected interest[] in travelling (privately in General Aviation Aircraft) by air," Compl. at 5–6, and he argues that he "should have the free will option of Piloting himself, family and friends, legally into and out of the United States," Pl.'s Opp'n at 8. He admits, however, that anyone whose airman certificates are revoked pursuant to § 44710 "can fly within, into or out of, the United States with Foreign Pilot Certificates, in Foreign registered aircraft," *id.*, and he asserts that flying U.S. registered aircraft between foreign countries is still permitted with a special letter of authorization, *id.* at 4.

These allegations are clearly insufficient to state a plausible claim of infringement of a constitutionally-protected right to travel. A law "implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal quotation marks and citations omitted)). Here, "[t]he case does not involve such a classification," so "[i]f the right to travel is implicated, it can only be because impeding travel is its primary objective or it actually deters travel." *Kansas v. United States*, 16 F.3d 436, 441 (D.C. Cir. 1994) (internal quotation marks omitted). Neither proposition finds support in the complaint.

Mr. Robinson does not allege that impeding travel is the primary objective of § 44710, or that § 44710 is actually deterring travel. He does not claim, for example, that § 44710 restricts in any manner an individual's ability to travel as a passenger by air, either among the states or internationally. *Cf. Latif v. Holder*, 969 F. Supp. 2d 1293, 1296 (D. Or. 2013) (holding that right to travel was infringed where plaintiffs were "completely ban[ned] . . . from boarding

commercial flights to or from the United States or over United States air space").  He does not allege that § 44710 authorizes the revocation of passports or subjects individuals to additional scrutiny when travelling by air.  *Cf. Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 539 (D.C. Cir. 2015) (holding that plaintiff who alleged that a federal agency violated his right to travel by maintaining inaccurate database records suggesting he was linked to terrorism had "not alleged any facts suggesting that his freedom to travel internationally has been infringed or adversely affected" where he retained his passport and was not prevented from accessing international transportation).  In fact, Mr. Robinson claims that those subject to revocation under § 44710 are still able to pilot foreign registered aircraft within the United States and to pilot U.S. registered aircraft internationally.

At its core, then, Mr. Robinson's claim is that § 44710 unconstitutionally burdens the right to travel because it prevents those who have had their certificates revoked from piloting U.S. registered aircraft within the United States.  But Mr. Robinson has offered no authority to suggest that the constitutionally-protected right to travel encompasses a right to pilot an individual's aircraft of choice.  To the contrary, a number of courts have held that an incidental restriction on single a mode of transportation does not implicate the constitutional right to travel. *See, e.g., Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (finding no infringement on right to travel in law banning certain types of ferries because "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right" (internal quotation marks omitted)); *Matthew v. Honish*, 233 F. App'x 563, 564 (7th Cir. 2007) (holding that denial of driver's license only denies plaintiff the ability to drive himself  in a car, and thus "does not impermissibly burden his right to travel"); *Duncan v. Cone*, No. 00-5705, 2000 WL 1828089, at *2 (6th Cir.

Dec. 7, 2000) ("A burden on a single mode of transportation simply does not implicate the right to interstate travel.") (unpublished); *Miller v. Reed*, 176 F.3d 1202, 1205–06 (9th Cir. 1999) (rejecting claim that denial of a driver's license violates right to interstate travel because "burdens on a single mode of transportation do not implicate the right to interstate travel," and there is no "fundamental right to drive"); *Kansas*, 16 F. 3d at 437–38 (holding that right to travel was not violated by legislation limiting interstate flights out of an airport because the effects on travel did not surpass the threshold of "negligible or minimal impact"); *City of Houston v. FAA*, 679 F.2d 1184, 1198 (5th Cir.1982) (finding that FAA regulation that limited the availability of certain flights had only "incidental effect on air travel from certain states," and rejecting as "feeble" the "claim that passengers have a right to the most convenient form of travel").

As this Circuit recently reiterated in *Pollack*, where a law may make a citizen marginally less likely to travel, the resulting effect on the individual's willingness to exercise his constitutional right to travel is "negligible and does not warrant scrutiny under the Constitution." 2015 WL4079788, at *9 (holding that hiring criteria that only considered applicants in a certain geographic area did not implicate the right to travel). This is because "[a] law does not 'actually deter' travel merely because it makes it somewhat less attractive for a person to travel interstate." *Id.*; *see also Kansas,* 16 F.3d at 441 (holding that where legislation generally prohibited airlines from offering interstate flights from a particular airport, any interference with interstate travel was "trivial" and did not implicate the constitutionally-protected right to travel).

In the absence of any allegation that § 44710 was enacted with the objective of deterring constitutionally-protected travel or that it is actually having that affect, the Court finds that the right to travel is simply not implicated by Mr. Robinson's allegations and grants the FAA's

motion to dismiss the right-to-travel claim pursuant to Rule 12(b)(6).[11]

### 4. Procedural Due Process Claim

As a final matter, the Court notes that Mr. Robinson's opposition brief asserts that the

FAA's revocation of his certificates was "not in comport with the Constitutional Fifth

Amendment Due Process of law requirements," citing the use of "misinformation" in the agency

revocation proceedings, the fact that he was not afforded a hearing, and the dismissal of his

appeal on an incorrect basis.  Pl.'s Opp'n at 2–7.  A fair reading of these allegations does not

reveal a broad facial challenge to the adequacy of process afforded by § 44710 over which this

Court would have jurisdiction.  *See Amerijet*, 43 F. Supp. 3d at 15 (holding that § 46110(a)

prohibits "a district court from hearing 'as-applied challenges' in which the plaintiff seeks

review of the *procedures* and merits of an order" (emphasis added)).  In an abundance of caution,

however, the Court finds that to the extent that Mr. Robinson intended to present a facial

challenge to the process afforded by § 44710, he has clearly failed to state such a claim.

"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'"  *Jifry v. FAA*, 370 F.3d 1174, 1183 (D.C. Cir.

---

[11] Mr. Robinson's complaint speaks only of the "right to travel" and the "right of a Citizen of one State to enter and leave another State," *see* Compl. at 7, but his opposition brief invokes a "protected liberty interest in the travel by air, INTERNATIONALLY," Pl.'s Opp'n at 7.  The Supreme Court has made clear that the right to interstate travel and the right to international travel are distinct, *see Haig v. Agee*, 453 U.S. 280, 306–07 (1981) (explaining that the "right of interstate travel is virtually unqualified" but that the right of international travel "can be regulated within the bounds of due process" (internal quotation marks omitted)).  As explained above, however, Mr. Robinson has not alleged that § 44710 restricts interstate *or* international travel; he claims only that it limits the ability of certain individuals to fly certain planes within the United States.  In the absence of any facts showing that the statute adversely affects the ability of individuals to travel internationally, the international travel claim—to the extent that this Court can consider a claim raised for the first time in an opposition brief—must fail alongside the interstate travel claim.  *See Abdelfattah*, 787 F.3d at 539 (holding that in the absence of facts showing actual infringement on right to travel internationally, the plaintiff's "allegations are too speculative and intangible to state a claim of deprivation of liberty").

2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  To determine whether the procedures afforded are constitutionally adequate, courts weigh "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* (quoting *Matthews*, 424 U.S. at 335).

Here, as previously discussed, Mr. Robinson has alleged that § 44710 affects the private liberty interest in pursuing one's chosen profession by revoking pilots' certificates, and the FAA has identified legitimate governmental interests in combatting illegal drug trafficking and enhancing aviation safety that are rationally related to the statute.  The Court thus turns to consider the procedures that are provided by § 44710.

By its plain language, § 44710 is triggered after an individual is convicted of certain drug-related felonies if the Administrator of the FAA finds that an aircraft was used to facilitate the offense and the individual served as an airman or was on the aircraft in question in connection with committing or facilitating the offense.  49 U.S.C. § 44710(b).  Before the Administrator can revoke the individual's certificates, however, "the Administrator must—(1) advise the holder of the certificate of the charges or reasons on which the Administrator relies for the proposed revocation; and (2) provide the holder of the certificate an opportunity to answer the charges and be heard why the certificate should not be revoked."  *Id.* § 44710(c).  If the individual's certificates are subsequently revoked, he is afforded the right to "appeal the revocation order" to the NTSB, which "is not bound by findings of fact of the Administrator," and "shall affirm or reverse the order after providing notice and an opportunity for a hearing on

the record." *Id.* at §44710(d)(1).  The revocation is stayed while the appeal is pending except in

extraordinary circumstances, and an individual whose appeal is denied "may obtain judicial

review of the order." *Id.* at § 44710(d)(2)–(3).

As the Sixth Circuit explained when finding that "§ 44710 provides adequate procedural

safeguards when a pilot's license is revoked," "no additional procedures are required to afford

due process." *Kratt v. Garvey*, 342 F.3d 475, 485 (6th Cir. 2003).  The statute provides for

notice and a pre-revocation hearing, stays the revocation during appeal, affords *de novo* review

of the Administrator's factual findings by the NTSB, and provides for judicial review by the U.S.

Courts of Appeals.  *Cf. Jifry*, 370 F.3d at 1177–83 (holding that pilots whose certificates were

revoked by the FAA due to a "security risk to civil aviation or national security" were afforded

adequate procedures where they "had the opportunity to file a written reply to the TSA's initial

determination and were afforded independent *de novo* review of the entire administrative record

by the Deputy Administrator of the TSA," as well as "*in camera* judicial review of the record").

Mr. Robinson does not appear to allege that these procedures are constitutionally

inadequate or suggest additional procedures that he believes should be required.[12]  Instead, he

---

[12] Mr. Robinson complains in his opposition brief that he was not afforded a "hearing before any Administrative law judge." Pl.'s Opp'n at 2.  According to the ALJ's order of affirmance, however, summary judgment was granted in favor of the FAA after a review of the entire record and the pleadings, including Mr. Robinson's written appeal, the FAA's motion for summary judgment, and Mr. Robinson's "Affidavit of Facts in Opposition" to that motion.  ALJ Order, Def.'s Ex. C at 1–7 (holding that because the material facts—"that respondent has been convicted of narcotics felonies, and that he served as an airman or was onboard aircraft in connection with the commission or facilitation of those offense"—were beyond dispute, the FAA was entitled to summary judgment as a matter of law).  It is therefore clear that Mr. Robinson was afforded a paper hearing before the ALJ, but he may be claiming that an oral hearing is constitutionally required.  It is well-established, however, that "[d]ue process is a flexible concept, tailored to provide a meaningful opportunity to be heard, but satisfied by no fixed formula." *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987) (holding that employee had no constitutional right to an oral hearing to dispute information in his personnel file because the incidents in the file could "be adequately disputed through documentary evidence"); *see also Gray Panthers v. Schweiker*, 716 F.2d 23, 35 (D.C. Cir. 1983) (holding that

seems to argue only that the procedures mandated by § 44710 were not followed in his case.  In the absence of any clear allegations that additional procedures should be required, and in light of the significant procedural protections afforded by § 44710, the Court finds that to the extent that Mr. Robinson sought to assert a facial challenge to the adequacy of § 44710's procedural safeguards, the claim must be dismissed pursuant to Rule 12(b)(6).

Thus, because this Court lacks subject-matter jurisdiction as to Mr. Robinson's as-applied claims, and because he has failed to state a plausible claim that § 44710 is facially unlawful, the Court grants the FAA's motion to dismiss the matter in its entirety.[13]

## V.  CONCLUSION

For the foregoing reasons, the FAA's motion to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is granted.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

---

"a full paper hearing" can satisfy minimum due process requirements depending on the claim at issue, particularly when credibility determinations are not required); *Pickus v. U.S. Bd. of Parole*, 543 F.2d 240, 246 (D.C. Cir. 1976) ("Although we have recognized that provision of oral hearings may be wise in some instances, we have never held that due process requires oral presentation of views as a matter of course."). Mr. Robinson alleges neither that ALJ review of revocation orders regularly requires credibility or veracity determinations, or that "the capacities and circumstances of those who are to be heard" necessitate an opportunity for oral presentation, *Goldberg v. Kelly*, 397 U.S. 254, 268–69 (1970).  The Court therefore finds that, to the extent Mr. Robinson's due process challenge is premised on the failure to require an oral hearing before the ALJ in all instances prior to revocation, he has failed to state a claim.

[13] Mr. Robinson's complaint also cites the Sixth Amendment to the United States Constitution, Compl. at 5, which provides for the rights of an accused in a criminal trial, *see* U.S. Const. amend VI.  But the complaint does not allege any particular violation of a right protected by the Sixth Amendment, and the Court is unable to discern one from the allegations set forth. To the extent that Mr. Robinson intended to allege that the administrative revocation of pilots' certificates violates the Sixth Amendment, however, the Court agrees with the FAA that such a claim would fail as a matter of law, because "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions,'" *Austin v. United States*, 509 U.S. 602, 608 (1993), and thus are inapplicable to this type of administrative action.

Dated:  August 24, 2015                          RUDOLPH CONTRERAS
                                                 United States District Judge